UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MICHAEL THURMAN BALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 5:11-CV-196-HRW-REW |
| | ) | |
| WARDEN STEVE J. HANEY, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \*

Petitioner, Michael Thurman Ball, is a Kentucky inmate.  DE #1 (Petition).  On May 30, 2008, a Bath Circuit Court jury convicted Ball of third degree assault and for being a first-degree persistent felony offender (PFO).  Ball is currently serving a four-year sentence for the assault, enhanced to twenty years by virtue of the PFO conviction. DE #7-7 (Judgment).

On June 16, 2011, Ball, by counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  DE #1 (Petition).  Respondent, Warden Steve J. Haney, responded in opposition.  DE #7 (Response).  Petitioner did not reply.  The District assigned the matter to the undersigned for a recommended disposition.  The matter is ripe for consideration.

The Court **RECOMMENDS** that the District Court **DISMISS** the Petition (DE #1).  Further, the District Court should wholly **DENY** a certificate of appealability. Petitioner fails to justify displacing the treatment of the matter by the courts of the Commonwealth.

1

I.      **BACKGROUND INFORMATION**

On August 5, 2007, Bath County Sheriff's Department dispatch received a call concerning a disturbance at a small store (owned by Petitioner's mother) in Salt Lick. *Ball v. Commonwealth*, 2008-SC-430-MR at 2 (March 18, 2010) (unpublished), *available at* DE #7-11.   Bath County Sheriff's Deputy Ron Allison responded to the call and found the shop locked and closed.  At some point, Deputy Allison saw a man, whom he later identified as Ball, walking across the parking lot of an adjacent BP service station. Allison watched the man enter the grounds of a residence next to the BP station, drink something from a container, pour some liquid on the ground, and then drink more. Allison later identified the residence as Ball's.  *Id.*

While leaving the area, Allison drove past the residence and noticed Ball sitting on the front porch with a beer can beside him. Allison then turned the police cruiser around and returned to the home to inquire.  Allison found Ball and another individual, Chad Albertson, sitting on the front steps of Ball's house.  Per Allison, Ball smelled of alcohol, slurred his speech, was uncooperative in answering Allison's questions, and his answers were "nonsensical."  *Id.* at 3. Allison thus concluded that Ball was intoxicated.[1]

After some period of questioning, Allison decided to arrest Ball, although he did not immediately inform Ball of his intention.   Ball, looking for cigarettes, advised Deputy Allison that he (Ball) was going inside.  Allison objected, stating, "No, I'm not done asking you questions yet, you need to wait right there."[2] *Id.* Ball ignored Allison

---

[1] The Kentucky Supreme Court's opinion indicates that Allison believed that Ball's actions (drinking on his front porch) violated the Kentucky public intoxication statute, K.R.S. § 222.202.  *Id.* at 3.
[2] The Kentucky Supreme Court found: "[B]y directing Ball to remain on the porch, it is apparent that Allison at this point detained Ball pursuant to *Terry v. Ohio*, 88 S. Ct. 1868

and entered the residence.  Allison followed Ball inside the home and tried to handcuff him by restraining Ball's left arm behind his back.  Allison verbally instructed Ball to place his hands behind his back, advising Ball further that he was under arrest.  Ball pulled away from Allison's grasp, stepped back, and removed a knife from his pocket. As he attempted to open the knife, it slipped out of his hand.  Ball then charged Allison, ultimately carrying both men out the front door, off the porch, and into the yard.  An altercation ensued, resulting in injuries to both men.  *Id.* at 3-4. Allison eventually subdued, detained, and charged Ball.

A Bath County grand jury indicted Ball on September 27, 2007, for first-degree wanton endangerment (KRS § 508.060), third-degree assault (KRS 508.025), and as being a first-degree persistent felony offender (KRS § 532.080).  At a hearing, defense counsel orally[3] moved to suppress evidence surrounding the August 5, 2007, events. Defensive arguments focused on the alleged illegality of Allison's entry into the home and attempted illegal arrest.  The trial court conducted a suppression hearing on January 3, 2008, initially sustaining Ball's motion as to the knife and unspecified statements made post- Allison's entry into the house.  The Commonwealth moved to clarify the court's order, and the court, based on authorities cited in the motion, reversed itself and finally denied the motion to suppress.  *Id.* at 4-5.

Following a two-day trial, the jury convicted Ball of third-degree assault, on May 30, 2008.[4]   The jury determined Ball to be a persistent felony offender, and

---

(1968), and Ball was not free to leave and enter the residence." *Id.* at 3 n.2 (citing *Strange v. Commonwealth*, 269 S.W.3d 847 (Ky. 2008)).
[3] Ball did not file a written suppression motion.
[4] The court dismissed the first-degree wanton endangerment charge upon agreement of the parties after the jury deadlocked.

recommended a sentence of twenty years (total) imprisonment.  The trial court sentenced

Ball consistent with the jury's recommendation on June 5, 2008.  *Id.* at 5. Ball directly

appealed to the Kentucky Supreme Court, alleging that he was entitled to a fourth-degree

assault instruction, that the trial court erred in denying his motion to suppress, that the

trial court denied Ball an opportunity to present a defense, and that the trial court erred in

not sequestering the jury.  On March 18, 2010, a majority (four) of the Kentucky

Supreme Court wholly affirmed the conviction.  Two justices dissented. *Id.* at 18-19

(Schroder, J. dissent); *id.* at 19-27 (Noble, J. dissent).

Ball filed the instant petition on June 16, 2011. The Court has evaluated all

briefing and the full relevant record. The petition stands ripe and ready for review.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

amended 28 U.S.C. § 2254, established a "'highly deferential standard for evaluating

state-court rulings,' which demands that state-court decisions be given the benefit of the

doubt."  *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S.

Ct. 357, 360) (2002) (per curiam)). Specifically, AEDPA requires:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the
>     Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination
>     of the facts in light of the evidence presented in the State court
>     proceeding.

28 U.S.C. § 2254(d)(1)-(2).  In contrast, when a state court has not addressed in any

manner the merits of a properly presented claim, the reviewing federal court assesses the

claim *de novo*.  *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007).  A petitioner bears the

burden of establishing any right to relief.  *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir.

2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).

      As the United States Supreme Court has articulated, "Under the 'contrary to'

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a

case differently than this Court has on a set of materially indistinguishable facts.'"

*Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., opinion of the Court for

Part II)).  In this regard, "clearly established law under the Act encompasses more than

just bright-line rules laid down by the Court.  It also clearly includes legal principles

enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir.

2002).  At the same time, habeas review focuses on the holdings of the Supreme Court,

not its *dicta* or holdings of the courts of appeals.  *Williams*, 120 S. Ct. at 1523 (regarding

*dicta*); *id.* at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996)) (regarding

reliance on jurisprudence from courts of appeals).

      Regarding the "unreasonable application" clause, the Supreme Court has held that

"a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from this Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523.  The writ may

not issue solely because the state court incorrectly applied the relevant Supreme Court

precedent; instead, the state court's misapplication must have been objectively

unreasonable.  *Id.* at 1521-23.  In determining whether the state court misapplied Supreme Court precedent, a federal court may look only to the state of the case law "as of the time of the relevant state-court decision."  *Id.* at 1523.  Ultimately, the habeas court should not grant relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

As to any "unreasonable determination of the facts" claim, a federal court must presume all determinations of factual issues by the state court to be correct unless the petitioner rebuts that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record.  *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)).  However, the presumption does not fully apply when the § 2254 petition involves mixed questions of law and fact.  *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007).

There need not be an opinion articulating the state court's reasoning in order to determine whether the state court's decision is the result of an unreasonable legal or factual conclusion.  *Harrington*, 131 S. Ct. at 784.  Indeed, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d) …. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* And, unless the petitioner affirmatively shows that the state court's decision "did *not* involve a determination of the merits of his claim," such as where the opinion expressly

states the claim was denied on procedural grounds, § 2254(d) applies on habeas review.

*Id.* at 784-85.  Where the state court resolves a petitioner's claim of error without articulating its reasons for the denial, then:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786; *accord Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (independent review where state court does not articulate reasoning for denial is "not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA").

If errors occurred, the reviewing court must evaluate whether they constitute "trial errors," "whose effect may be 'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt,'" or "'structural defects,' which 'defy analysis by harmless error.'"  *Jensen v. Romanowski*, 590 F.3d 373, 378 n.4 (6th Cir. 2009) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1717 (1993) (quotation omitted)).  With "trial errors," the reviewing court evaluates directly whether the error had a substantial and injurious effect in determining the jury's verdict or other case result.  *Id.* The query focuses on whether "grave doubts" exist as to the effect of error.  *Id.* (citing *O'Neal v. McAninch*, 115 S. Ct. 992, 993-94 (1995)).  If any error had little or no effect, then no habeas relief should be afforded.  *Id.* However, if the reviewing court finds itself at least in "virtual equipoise" about the harmlessness of the error, the court must grant the writ.  *Id.* As to "structural defects," reversal of the state-court conviction may be required without harmless error analysis.

*Id.* Generally, federal habeas corpus relief does not lie for errors in the application of state law unless such errors result in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479-80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[.]"); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

## III.    ANALYSIS

Petitioner here raises three total claims of constitutional error.  Specifically, Ball alleges that the Kentucky Supreme Court unconstitutionally denied his right to present a defense and to a lesser-included offense jury instruction.  Ball also alleges that his sentence is grossly disproportionate to the conviction, in violation of the Eighth Amendment.

### A.  *Right to Present a Defense*

Ball first argues that the Kentucky Supreme Court violated his due process right under the Sixth and Fourteenth Amendments to present a defense, when it affirmed the trial court's rulings denying Ball the opportunity to present testimony on the alleged illegality of his arrest and forbidding Ball from playing tapes of Deputy Allison's testimony from previous hearings in an effort to impeach Allison.  DE #1 (Petition) at 8. Petitioner contends that he had a right to present testimony at trial concerning the alleged illegality of Allison's entry into his residence and the legality of drinking on one's own property/porch.  *Id.* at 10.  Further, Ball alleges that he had a right to play the deputy's full testimony from the preliminary hearing and suppression hearing to impeach Allison. *Id.* at 14.

Respondent contends that the right of a criminal defendant to present a defense is not unlimited but rather is subject to particular rules of evidence. DE #7 (Response) at 42. Accordingly, Respondent asserts that the Kentucky courts' holdings are not contrary to or an unreasonable application of clearly established federal law. Further, as it relates to the impeachment video, Respondent argues that the facts on which Petitioner sought to impeach Allison were collateral matters, which, under Kentucky law, are permissive, not automatically authorized, subjects of proper impeachment. *Id.* at 45.

The Kentucky Supreme Court denied relief on direct appeal. *Ball*, 2008-SC-430-MR at 12-15. The Court considered together the issues of testimony concerning Allison's entry into the residence and the legality of drinking on one's own property, finding both issues to have "very little, if any, relevance to Ball's guilt or innocence on the principal charges. These legal conclusions simply were not material to whether Ball committed the offenses of wanton endangerment and/or third-degree assault in connection with the events of August 5, 2007." *Id.* at 13. The court thus concluded that the trial court properly excluded the evidence under Kentucky Rule of Evidence (KRE) 403 because the slight probative value was "substantially outweighed by the danger of undue prejudice, and because of the realistic possibility that the evidence would confuse or mislead the jury." *Id.*

The Kentucky Supreme Court also affirmed the trial court's ruling denying Ball's effort to attempt to impeach Allison by playing that witness's preliminary hearing and suppression hearing testimony in its entirety at trial. *Id.* Per the Kentucky court, the

9

alleged testimonial inconsistencies[5] were, "upon the whole, trivial upon the issue of whether Ball committed the crimes he was on trial for." *Id.* at 14.  Although not expressly stated in the Kentucky Rules of Evidence, Kentucky courts have consistently prohibited impeachment on collateral facts. *Metcalf v. Commonwealth*, 158 S.W.3d 740, 745 (Ky. 2005) ("[A]lthough there is no provision in the Kentucky Rules of Evidence prohibiting impeachment on collateral facts, we have consistently recognized that prohibition as a valid principle of evidence." (citations omitted)).  Per Kentucky's highest court, the alleged inconsistencies qualified as collateral matters and the impeachment testimony was excludable.  Further, the court agreed with the trial court that Ball also did not comply with the impeachment mechanics of KRE 613(a), which lays out the proper procedure for impeachment on a prior inconsistent statement.  Due to "Ball's substantial departure from the proper technique for impeaching a witness with a prior inconsistent statement," the Supreme Court alternatively found the evidence properly excluded. *Ball*, 2008-SC-430-MR at 15.

A court exercising habeas jurisdiction applies a harmless error standard in determining the availability of habeas relief for constitutional trial error. *Brecht*, 113 S. Ct. at 1722.  Thus, a criminal defendant must show that the alleged error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Kotteakos v. United States*, 66 S. Ct. 1239, 1253 (1946)). Ball is not entitled to habeas

---

[5] The Supreme Court enumerated 7 such inconsistencies Ball raised on appeal: (1) whether Allison saw Ball in the yard; (2) whether Allison had previously heard of Michael Ball by name; (3) whether it is legal to have beer in public view; (4) whether Allison approached Ball at Ball's residence because of the beer can or the dispatch call; (5) whether Allison knew the brand of beer he saw on the porch; (6) whether the beer can was open; and (7) whether Allison observed cigarettes, cigars, or a pipe next to the beer can. *Id.* at 14.

relief under this standard.  Even if there were error, he attempts no real prejudice

showing.  None of the impeachment-based arguments impacts the evidence concerning

the fact of and evidence concerning the assault itself.

A criminal defendant does not have an unlimited right to present evidence. *United*

*States v. Scheffer*, 118 S. Ct. 1261, 1264 (1998) (citations omitted). Further, "the

exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it

has infringed upon a weighty interest of the accused." *Id.* at 1264. Accordingly, Ball's

right to present a "complete" defense did not give him an "unlimited right to ride

roughshod over reasonable evidentiary restrictions . . . . [a defendant] 'must comply with

established rules of procedure and evidence designed to assure both fairness and

reliability.'" *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (quoting *Chambers v.*

*Mississippi*, 93 S. Ct. 1038 (1973)). Here, the Supreme Court of Kentucky found the

testimony regarding Petitioner's arrest properly excludable because the "legal

conclusions [Ball sought to introduce] simply were not germane" to Ball's guilt or

innocence on the charged conduct.  *Ball*, 2008-SC-430-MR at 13.  Further, the Kentucky

courts deemed the topics on which Ball sought to impeach Allison collateral matters and,

regardless, Ball failed to follow the correct evidentiary procedure to introduce the

evidence.  *Id.* at 14-15.  The Court finds no reason to displace the determinative findings

of the state courts.

Ordinarily, federal habeas review would not encompass error predicated on state

evidentiary rulings.  The only exception is an error of sufficient magnitude to deny the

fundamental fairness imported within due process.  *See Henness v. Bagley*, 644 F.3d 308,

326 (6th Cir. 2011) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2005)); *id.*

("When reviewing a claim of evidentiary error in a federal habeas petition, we defer to

the state court's interpretation of its own rules of evidence and procedure.") (citing

*Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)).  Here, the Kentucky Supreme Court

expressly determined that the evidence was properly excluded under Kentucky evidence

law.

      Where a constitutional standard is general, "the range of reasonable applications

is substantial." *Richter*, 131 S. Ct. at 788.  Ball does not effectively argue that excluding

the relevant testimony or prior statements worked any constitutional injury in this case.

Indeed, Kentucky's high court affirmed exclusion of the testimony concerning Ball's

arrest, finding that any probative value was outweighed by the danger of undue prejudice

and that the jury could be confused or misled by the evidence.  *Ball*, 2008-SC-430-MR at

13.  The Supreme Court also found the impeachment testimony excludable as pertaining

only to collateral matters.  *Id.* at 14.  Petitioner here fails to provide any persuasive reason

to displace the decision of the Kentucky courts.

      "[T]he Due Process Clause does not permit the federal courts to engage in a finely

tuned review of the wisdom of state evidentiary rules."  *Marshall v. Lonberger*, 103 S.

Ct. 843, 861 n.6 (1983).   A trial error is subject to harmless error analysis "'because it

may be quantitatively assessed in the content of other evidence presented'" at trial.

*Markham v. Smith*, 10 Fed. App'x 323, 325 (6th Cir. 2001) (quoting *Brecht*, 113 S. Ct. at

1722). Accordingly, an error in the admission of evidence by a state court is only

cognizable in federal habeas proceedings when the error "den[ies] the defendant his

fundamental right to a fair trial."  *Id.* (citing *Kelly v. Withrow*, 25 F.3d 363 (6th Cir.

1994)).

The state decisions rested on fundamental and well-recognized rules of evidence relating to relevance, probative value/prejudice, and impeachment.  Such rules, properly applied, do not unconstitutionally abridge defense presentation.  *See Holmes v. South Carolina*, 126 S. Ct. 1727 (2006) ("While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." (citing Fed. R. Evid. 403)); *Fry v. Pliler*, 127 S. Ct. 2321, 2329 (2007) ("[D]ue process considerations hold sway over state evidentiary rules only when the exclusion of evidence 'undermine[s] fundamental elements of the defendant's defense.'" (citing *Scheffer*, 523 S. Ct. at 1268); *Crane v. Kentucky*, 106 S. Ct. 2142, 2146 (1986) ("[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests in fairness and reliability-even if the defendant would prefer to see that evidence admitted." (citation omitted)).   Though some aspects of the policing here may be troubling, as Justice Noble decried, the subject evidence simply does not fairly relate to the elements of the Kentucky crime at issue.[6] The attempted impeachment would have been procedurally improper and outside the borders of materiality.  Petitioner barely mentioned, much less argued, that the state rules themselves might violate *Chambers* or *Holmes*.  Instead, Ball cavils at Kentucky's

---

[6] If the circumstances prior to the arrest and the legality of the arrest itself were not relevant to the elements of the crime, the state had legitimate concerns that evidence of or discussion of either topic could divert and mislead the jury.  The defense had reason to desire the proof—to angle for the same indignation Justice Noble well expressed—but in the confines of the legal status effected by the construction of the applicable statutes, the proof did not legitimately pertain.

13

application of its own well-recognized and established evidentiary rules, which is not an avenue for relief in this context. Kentucky's decision was proper under its rules, and, in any event, none of the excluded evidence would fairly affect assessment of the assault incident itself. Kentucky's decision is well within constitutional parameters and thus has no traction under § 2254.

### B.  *Jury Instruction on Fourth-Degree Assault*

Ball next alleges that the Kentucky Supreme Court violated various federal rights[7] when it affirmed the trial court's refusal to give a jury instruction on fourth-degree assault. DE #1 (Petition) at 8. Ball asserts that he requested and the trial court ultimately denied an instruction on assault fourth under self-protection, premised on the imperfect self-defense provision of KRS § 503.120(1). Respondent counters that Ball simply rehashes the arguments he presented on direct appeal, further arguing that he "fails to make a claim cognizable under federal habeas review." DE #7 (Response) at 49.

The Kentucky Supreme Court denied relief on direct review. *Ball*, 2008-SC-430-MR at 5-9. In support of the requested instruction, Ball argued that a jury could have concluded that Ball thought he was entitled to self-defense but that his belief was so unreasonable as to rise to the level of wantonness (which would permit conviction for fourth-degree assault but not third-degree assault). *Id.* at 5-6.

Kentucky law defines third-degree assault, in relevant part: "(1) A person is guilty of assault in the third degree when the actor . . . (a) . . . intentionally causes or attempts to cause physical injury to: 1. A state, county, city, or federal peace officer . . . ." K.R.S. §

---

[7] Ball does not specifically identify which federal constitutional right(s) the ruling violated. Instead, he simply asserts that the "trial court's failure to instruct the jury on the . . . . lesser-included offense[] denied Mr. Ball his rights under the 5th, 6th, 8th, and 14th Amendments to the United States." DE #1 (Petition) at 22.

508.025(1)(a)(1).  The law defines fourth-degree assault, in relevant part: "(1) A person is

guilty of assault in the fourth degree when: (a) He intentionally or wantonly causes

physical injury to another person."  K.R.S. § 508.030.  Kentucky also provides for

imperfect self-defense:

> When the defendant believes that the use of force upon or toward the
> person of another is necessary for any of the purposes for which such
> belief would establish a justification under KRS 503.050 to 503.110 but
> the defendant is wanton or reckless in believing the use of any force, or
> the degree of force used, to be necessary . . . , the **justification afforded
> by those sections is unavailable in a prosecution for an offense for
> which wantonness or recklessness, as the case may be, suffices to
> establish culpability**.

K.R.S. § 503.120(1) (emphasis added).[8]  Thus, mistaken self-defense may partially

protect a defendant against liability for an intentional, but not a wanton, crime.  Finally, as

an overlay to the above provisions, Kentucky law limits the availability of the imperfect

self-defense in certain instances:

> Notwithstanding the provisions of KRS 503.050 [the general self-defense
> statute], the use of physical force by a defendant upon another person is
> not justifiable when:
>
> (1) The defendant is resisting an arrest by a peace officer, recognized to be
> acting under color of official authority and using no more force than
> reasonably necessary to effect the arrest, although the arrest is unlawful[.]

K.R.S. § 503.060(1).

After examining the interplay between the relevant statutes, the Kentucky

Supreme Court found that applicable principles of statutory construction resulted in

primacy of the more specific statute (KRS § 503.060) and precluded defense availability

as to Ball.  *Ball*, 2008-SC-430-MR at 8-9.  Per the high court, the imperfect self-defense

---

[8] Kentucky Revised Statute § 503.020 permits a defendant to use justification (as defined
within KRS Chapter 503) as a defense in any prosecution for an offense.  K.R.S. §
503.020.  The self-defense statute (KRS § 503.050) falls within this model.

statute does not apply, as foreclosed by the more specific statute addressing arrest, "in situations where a police officer uses no more force than reasonably necessary to arrest and the arrestee was aware that he was being placed under arrest." *Id.* at 9. In other words, in Kentucky, self-defense is categorically unavailable, **even if an arrest is unlawful**, as long as an officer uses no more force than is reasonably necessary to effectuate the arrest, and the arrestee is aware of the arrest. *See id*; *id.* at 26 (Noble, J., dissenting) (discussing statute: "If he [a defendant facing unlawful arrest] responds with self-protective force, under the current law he is guilty of third-degree assault, and must take the chance that the only way to excuse his self-defense is by a court finding that the officer used excessive force."). Applying those principles to Ball's case, the court found no evidence of unreasonable force by the deputy in the instant circumstance and, thus, Ball was not entitled to a fourth-degree assault instruction premised on imperfect self-defense. *Id.*

Ball is not entitled to § 2254 relief. "The Supreme Court has never held that due process requires lesser-included offense instructions in non-capital cases." *Draper-El v. Doom*, 467 Fed. App'x 438, 439 (6th Cir. 2012) (citing *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001)). Further, in capital cases, the requirement of lesser-included offense instructions is grounded on Eighth Amendment, not due process, concerns. *Id.* (citing *Baby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990)). Plainly, then, Ball cannot show that Kentucky's denial of the instruction was contrary to or an unreasonable application of federal law in this non-capital scenario.

Regardless, the claim, on its merits, must fail. "A claim that a trial court failed to give a jury instruction is not cognizable on federal habeas review unless the omission 'so

infected the entire trial that the resulting conviction violates due process.'" *Hudson v. Berghuis*, 174 Fed. App'x 948, 955 (6th Cir. 2006) (quoting *Henderson v. Kibbe*, 97 S. Ct. 1730 (1977)). The crux of Ball's argument is that Officer Allison used more force than reasonably necessary to effectuate the arrest, thus removing any limitation imposed by KRS § 503.060(1). Petitioner balks at entry into the home and characterizes as an assault Allison's decision to first attempt to restrain Ball **before** advising Ball that he was under arrest. Ball may not agree with Allison's choices, but he offers nothing to justify § 2254 relief under the law as it stands.

The Kentucky Supreme Court found that Petitioner was not, under Kentucky law, entitled to a justification (or imperfect self-defense) instruction. Ball's petition relies almost exclusively on state court precedent, citing only two United States Supreme Court cases. He offers nothing to show how the Kentucky courts' decision was contrary to or an unreasonable application of federal law. He further does not impugn the record-based factual findings of the Supreme Court, most notably that "there is no evidence that Allison used unreasonable force for an arrest under these circumstances." *Ball*, 2008-SC-430-MR at 9. Factually, then, the record would not support the instruction. Simply put, Ball does not successfully impeach the reasonable conclusions of the Kentucky courts on either the law or the facts. Ball is not entitled to § 2254 relief.[9]

---

[9] The Court also finds unavailing Ball's argument that the Kentucky courts violated his right to present a defense because section 11.13 of *Cooper Kentucky Instructions to Juries* includes an instruction on self-protection in the context of assault on a peace officer. DE #1 (Petition) at 22. Here, the Kentucky courts found the instruction inappropriate and inconsistent with the law. Further, even under Kentucky law, *Cooper Kentucky Instructions to Juries* is not binding on Kentucky courts. *Carranza v. Commonwealth*, No. 2010-CA-1388-MR, 2012 WL 424997, at *5 (Ky. Ct. App. Feb. 10, 2012). Ball articulates nothing to show how the court's failure to give an instruction

### C.  Length of Sentence

Ball's final claim is that the twenty year sentence the Bath Circuit Court imposed is disproportionate to the charges on which the jury ultimately convicted.   DE #1 (Petition) at 22.  Ball does not deny that he is a recidivist or that repeat offenders may be sentenced more severely, based on recidivist penalty enhancement statutes, but he otherwise alleges that the sentence "far exceeds any reasonable recidivism enhancement of the penalty for the crime that was actually committed." *Id.* at 26.  Respondent relies primarily on procedural default, but further defends the sentence as reasonable within the statutory maximum.  DE #7 (Answer) at 52-56.

Petitioner did not raise the claim on direct appeal or via collateral attack. Ball thus procedurally defaulted the theory as he did not raise the issue to the Kentucky courts. *See Childress v. Brigano*, 27 Fed. App'x 564, 555-56 (6th Cir. 2001) ("Generally, when a petitioner procedurally defaults federal constitutional claims in the state courts, federal habeas review is precluded unless petitioner can establish cause for the procedural default and prejudice attributable thereto." (citing *Wainwright v. Sykes*, 97 S. Ct. 2497 (1977))). Federal habeas relief is unavailable.  *Gray v. Netherland*, 116 S. Ct. 2074, 2080 (1996); *Slaughter v. Parker*, 450 F.3d 224, 235 (6th Cir. 2006).  Again, Ball did not reply, and he makes no cause and prejudice showing.  Further, Ball cannot now raise the claim to the Kentucky courts.  *See Shannon v. Commonwealth*, No. 2002-CS-423-MR, 2003 WL 1948891 (Ky. Ct. App. April 25, 2003) ("[A] defendant may not use RCr 11.42 to raise issues which either were raised or should have been raised on direct appeal." (citation omitted)); *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky. 1988) (noting that an RCr

---

from a Kentucky pattern jury instruction treatise is an unreasonable application of or contrary to federal law under the § 2254 rubric.

11.42 motion is limited to issues that were not raised and could not have been raised in a direct appeal).

Ball argues against default, asserting that because Justices Schroder and Noble discussed the length of sentence in their individual dissents, Kentucky adjudicated the claim.  DE #1 (Petition) at 22 n.1.   Contrary to Petitioner's assertion, the Kentucky Supreme Court did not address or decide the issue, and Ball defaulted the claim.  A dissenting opinion questioning, criticizing, or referencing a sentence is not a "decision" of the state court resulting from an "adjudication." *Harrington*, 131 S. Ct.  at 784.  *See Jones v. Dretke*, 375 F.3d 352, 355 n.3 (5th Cir. 2004) ("A dissenting judge's reference to a claim, which is ignored by the litigants and the court's majority, does not by itself satisfy the requirements of exhaustion. . . . When a claim is merely addressed by a dissenting judge . . . we have no such assurance that the court enjoyed this "initial opportunity.").

Regardless of the default, however, the claim, as articulated, does not merit relief. "[T]he governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle-the 'precise contours' of which 'are unclear.'" *Lockyer v. Andrade*, 123 S. Ct. 1166, 1175 (2003) (quoting *Harmelin v. Michigan*, 111 S. Ct. 2680 (1991)).  Ball has not, on this record, shown anything to suggest that these "contours" do not permit the sentence imposed.  Proportionality analysis under the Eighth Amendment is guided by objective criteria, including the gravity of the offense and harshness of the penalty, the sentences imposed on other defendants in the same jurisdiction (or, whether more serious crimes are subject to the same penalty or to less serious penalties), and the sentences imposed by other

jurisdictions for the same crime. *Solem v. Helm*, 103 S. Ct. 3001, 3011 (1983).   Ball

does not present any evidence or substantial argument of this nature, only asserting that

the sentence is cruel and unusual.   The trial court sentenced Ball within the statutory

maximum[10] and based on the jury's recommendation.   "The gross disproportionality

principle reserves a constitutional violation for only the extraordinary case," *Lockyer*, 123

S. Ct. at 1175, and Ball has not shown that this is such a case.   He is not entitled to §

2254 relief.

**IV. Certificate of Appealability**

A certificate of appealability may issue where a habeas petitioner has made a

"substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).

This requires a petitioner to demonstrate that "jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S.

Ct. 1595, 1604 (2000).   The reviewing court must indicate which specific issues satisfy

the "substantial showing" requirement.   28 U.S.C. 2253(c)(3); *see also Murphy v. Ohio*,

263 F.3d 466, 467 (6th Cir. 2001) (requiring an "individualized determination of each

claim" in considering whether to grant a certificate of appealability).

Petitioner has not made a "substantial showing" as to any claimed denial of rights.

The Court believes its determination on the merits, which hinges on the deferential

---

[10] Kentucky Revised Statute § 532.080(6)(b) provides:

> If the offense for which he presently stands convicted is a Class C or Class
> D felony, a persistent felony offender in the first degree shall be sentenced
> to an indeterminate term of imprisonment, the maximum of which shall
> not be less than ten (10) years nor more than twenty (20) years.

K.R.S. § 532.080(6)(b).

AEDPA standard and a reasonable and factually supported result from the state court, is not debatable.  None of the claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under § 2254.  As such, Ball is not entitled to a certificate of appealability.

**V. Recommendation**

The Court **RECOMMENDS** that the District Court **DISMISS** Ball's § 2254 petition (DE #1) and **NOT** issue a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of November, 2012.

Signed By:

_Robert E. Wier_

United States Magistrate Judge